UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BEATRIZ KOLA DANIEL,                    )
*individually and as next*              )
*friend of Baby Daniel,*                )
                                        )
        Petitioner,           )
                                        )
    v.                          )    No. 2:26-cv-00171-JAW
                                        )
TODD LYONS, *in his*                    )
*official capacity as Director of*      )
*U.S. Customs and Immigration*          )
*Enforcement,*                          )
                                        )
        Respondent.           )

**ORDER ON EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241 WITH REQUEST FOR EMERGENCY
TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND
IMMEDIATE REUNIFICATION OF BREASTFEEDING MOTHER AND
INFANT CHILD**

The court grants a petitioner's petition for writ habeas corpus ordering the respondent to immediately release the petitioner from custody and further enjoining the respondent from re-detaining or otherwise separating the petitioner from her infant child without prior notice to the petitioner's counsel.

## I.    BACKGROUND

On April 2, 2026, Beatriz Kola Daniel, on behalf of herself and her infant child, filed an emergency verified petition for writ of habeas corpus and an emergency motion seeking a temporary restraining order (TRO) and a preliminary injunction to release her and reunite her with her nine-month-old child. *Emer. Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 with Req. for Emer. TRO, Prelim. Inj.,*

*and Immediate Reunification of Breastfeeding Mother and Infant Child* (ECF No. 1) (*Emer. Mot.*). [1] Ms. Daniel, a resident of Lewiston, Maine, is a citizen of Angola, who fled her home country due to political persecution on June 16, 2023. *Id.* ¶ 9. U.S. Customs and Border Protection (CBP) apprehended and initiated removal proceedings against Ms. Daniel when she arrived in the United States on May 1, 2024. *Id.* ¶ 10. On May 3, 2024, CBP released Ms. Daniel on personal recognizance. *Id.* ¶ 11. Upon release, Ms. Daniel moved to Lewiston, Maine. *Id.* Ms. Daniel states that she has complied with her conditions of release. She also reports that she is an asylum applicant with an individual hearing scheduled for March 9, 2029 at the Chelmsford, Massachusetts Immigration Court. *Id.* Ms. Daniel's first language is Portuguese.[2] *Id.* ¶ 12. She also speaks Lingala but does not speak fluent English. *Id.* Ms. Daniel is the mother of a nine-month-old infant, whom she exclusively or primarily breastfeeds. *Id.* ¶ 13. Breastfeeding is her child's primary source of nutrition, hydration, and immune protection. *Id.*

At the first teleconference of counsel held on April 3, 2026, counsel explained to the Court that, on March 29, 2026, state police arrested Ms. Daniel after a domestic dispute with her husband.[3] *Min. Entry* (ECF No. 9). On or about March 31, 2026,

---

[1]     In issuing this order, the Court relies on the facts as provided in Ms. Daniel's March 6, 2026 verified emergency petition.

[2]     Petitioner's counsel later confirmed that Ms. Daniel speaks French as one of her primary languages.

[3]     Ms. Daniel's counsel reports that Ms. Daniel and her husband dispute the facts surrounding the events of March 29, 2026. The Court simply acknowledges there is an ongoing state criminal investigation into an alleged domestic dispute, and the Court takes no position on what may or may not have transpired on March 29, 2026 between Ms. Daniel and her husband.

U.S. Customs and Immigration Enforcement (ICE) took Ms. Daniel into custody, separating her from her infant child. *Id.*; *Emer. Pet.* ¶ 15. Around the same time, Ms. Daniel fell ill and tested positive for a serious infectious disease. Ms. Daniel was later taken to Mercy Hospital in Portland Maine for treatment, where she has been held in isolation to avoid further spread of her illness. *Min. Entry.*

Ms. Daniel reports ICE officers are stationed at the hospital, and she anticipates they will take her into physical custody upon her discharge from the hospital. *Emer.* ¶ 18. Ms. Daniel also anticipates ICE will transfer her to a detention facility far from her infant child, her lawyer, and the Chelmsford, Massachusetts Immigration Court. *Id.*

At the second teleconference of counsel held on April 3, 2026, Ms. Daniel's counsel informed the Court that the chief medical officer of Mercy Hospital determined Ms. Daniel to be a public health risk and recommended eight weeks of isolation to recover and to prevent further spread of her illness. *Min. Entry* (ECF No. 11). The chief medical officer also confirmed that Ms. Daniel could breastfeed her child during the period of isolation because the infant had already been exposed. *Id.*

## II.   THE PARTIES' POSITIONS

Ms. Daniel alleges that her separation from her infant child violates her due process rights under the Fifth Amendment of the United States Constitution. *Id.* ¶¶ 20-23. Because of their forced separation, her child is deprived of their primary source of nutrition and essential immunological protection. *Id.* ¶ 16. Without the ability to nurse, Ms. Daniel maintains that she is at serious risk of developing

mastitis, a potentially dangerous infection that may require hospitalization and intravenous antibiotics. *Id.* Ms. Daniel asks that this Court order Respondent to immediately release her and reunite her with her nine-month-old breastfeeding infant child, as well as an order prohibiting Respondent from re-detaining or otherwise separating her from her infant child without prior notice to her counsel. *Id.* ¶¶ 33-36; *Min. Entry.* At the recommendation of the chief medical officer at Mercy Hospital, Ms. Daniel proposes that she and her infant remain in isolation for eight weeks at her sister's home in Lewiston, Maine. *Min. Entry.* Ms. Daniel further proposes that she be released on personal recognizance subject to the same conditions of her May 3, 2024 release on recognizance while she recovers in isolation at her sister's home. *Id.*

Respondent maintains that Ms. Daniel is subject to mandatory detention pursuant to § 1225(b)(2) of the Immigration Nationality Act (INA), as dictated by controlling agency precedent. However, Respondent acknowledge that the caselaw from this Court has uniformly sustained challenges to Respondent's asserted interpretation of the INA.

## III. DISCUSSION

### A. Jurisdiction

As an initial matter, the Court concludes that it retains jurisdiction over Ms. Daniel's habeas petition. "District courts are limited to granting habeas relief 'within their respective jurisdictions,'" *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)), and "with respect to habeas petitions 'designed to relieve an

individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'" *Id.* (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)). Furthermore, under habeas law, jurisdiction in a particular district is established when a petitioner is physically present in the district at the same moment a petition is filed there on her behalf. *Rumsfeld*, 542 U.S. at 435 (2004); *United States v. Hayman*, 342 U.S. 205, 213 (1952); *Ahrens v. Clark*, 335 U.S. 188, 190 (1948). Here, the Court retains jurisdiction over this matter, because Ms. Daniel filed her habeas petition when she was in custody in the District of Maine.

### B.   The Merits

Consistent with the mass of recent caselaw addressing this question on similar facts, the Court concludes that § 1225(b)(2) is inapplicable to Ms. Daniel. Rather, she is subject to discretionary detention under § 1226(a) and entitled to a bond hearing before an Immigration Judge. Furthermore, given the unique circumstances of this case, the Court suspends the deadline for Ms. Daniel to receive a bond hearing until she is no longer a public health risk. In the meantime, the Court orders Ms. Daniel released on personal recognizance, subject to the same conditions of her May 3, 2024 release on personal recognizance. The Court further orders Respondent must give Ms. Daniel's counsel seventy-two-hours prior notice before they may re-detain her or otherwise separate her from her infant child.

#### 1.   Statutory Framework

##### a.   Mandatory Detention under Section 1225(b)(2)

5

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted" or "who arrives in the United States." 8 U.S.C. § 1225(a)(1). Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (plurality opinion). Relevant here is § 1225(b)(2).[4] Under § 1225(b)(2) "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for the duration of removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Thus, § 1225(b)(2) creates a mandatory detention scheme. *See Jennings*, 583 U.S. at 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"). As other courts have recognized, this language requires that "several conditions must be met" to impose mandatory detention under § 1225(b)(2). *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 487 (S.D.N.Y. 2025). Specifically, the noncitizen must be: "(1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted." *Id.*; *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025).

---

[4]     Section 1225(b)(1) subjects arriving noncitizens and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" to expediated removal proceedings. *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). Noncitizens subject to expedited removal can avoid removal with successful asylum claims. However, if a noncitizen detained under § 1225 does not indicate an intent to apply for asylum, express a fear of persecution, or is "found not to have such a fear," she is detained until removed. *Id.* §§ 1225(b)(1)(A)(i), (B)(iii)(IV). Ms. Daniel is an asylum applicant, and Respondent assert only that Ms. Daniel is subject to mandatory detention under § 1225(b)(2), not § 1225(b)(1).

####   b.      Discretionary Detention under Section 1226(a)

By contrast, § 1226 governs the "usual removal process" with an evidentiary hearing before an immigration judge. *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Section 1226(a) gives immigration authorities power to issue an administrative warrant and either continue detention for removal proceedings or release the noncitizen on "bond . . . or conditional parole." 8 U.S.C. § 1226(a)(1)-(2). Section 1226(a) thus "establishes a discretionary detention framework for noncitizens." *Gomes v. Hyde*, 804 F. Supp. 3d 265, 268 (D. Mass. 2025). However, § 1226's discretionary detention regime has one exception: immigration authorities "shall take into custody" any noncitizen involved in certain enumerated criminal activities. 8 U.S.C. § 1226(c)(1). None of those criminal activities is at issue here.

Once arrested under § 1226(a), immigration authorities make an individualized initial custody determination after which they have discretion to release a noncitizen if the noncitizen can "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8) (2025). If the immigration officer opts for continued detention, the noncitizen may seek review of that decision at a bond hearing before an immigration judge. 8 C.F.R. § 236.1(d)(1) (2025). At a bond hearing, the government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or "by preponderance of the evidence that [the noncitizen] poses a flight risk." *Hernandez-*

7

*Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).  An immigration judge's decision to continue detaining a noncitizen may be appealed to the BIA.  8 C.F.R. § 236.1(d)(3).

In *Jennings*, the Supreme Court provided guidance on the difference between the statutes, explaining that § 1225(b)(2) "authorizes the Government to detain certain aliens *seeking admission* into the country under," while § 1226(a) "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings."  *Jennings*, 583 U.S. at 289 (emphasis supplied); *see also id.* at 288 (explaining that, "once inside the United States" a noncitizen "*present in the country* may still be removed" under "Section 1226") (emphasis supplied)).

### c.      Parole Pursuant to Section 1182(d)(5)(A)

"Parole pursuant to Section 1182(d)(5)(A) serves a unique function." *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC), 2025 U.S. Dist. LEXIS 233224, at *34 (E.D.N.Y. Nov. 28, 2025).  Although § 1182(d)(5)(A) does not grant admission to the United States, it allows the Secretary of Homeland Security to permit certain noncitizens "on a case-by-case basis" to enter or remain in this country only for "urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 288.   For example, § 1182(d)(5)(A) is simultaneously the only method of parole for those subject to mandatory detention under § 1225(b), but it also covers asylum applicants who obtain advance parole to travel into and out of the United States. *Caiza v. Scott*, No. 1:25-cv-00500-JAW, 2025 U.S. Dist. LEXIS 211907, at *16 (D. Me. Oct. 28, 2025) (citing 8 C.F.R. § 212.5(f)).

However, parole is "not [to] be regarded as an admission of the alien[,] and when the purposes of such parole . . . have been served," § 1182(d)(5)(A) mandates that "the alien shall forthwith return or be returned to the custody from which he was paroled." *Id.* Thereafter the parolee's case "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* In other words, parole under § 1182(d)(5)(A) "employs a legal fiction whereby non-citizens are physically permitted to enter the country but are nonetheless 'treated,' for legal purposes, 'as if stopped at the border.'" *Martinez*, 792 F. Supp. 3d at 216 (quoting *Thuraissigiam*, 591 U.S. at 139).

### 2.    Applicable Statutory Basis for Detention

The parties agree Ms. Daniel was paroled into the United States pursuant to § 1182(d)(5)(A), and neither party disputes that Ms. Daniel is "an applicant for admission" or that she is "not clearly and beyond a doubt entitled to be admitted." Instead, the question here, as with so many immigration habeas cases to reach the district courts in recent months, is whether Ms. Daniel is "seeking admission" such that she is subject to mandatory detention under Section 1225(b)(2)(A).

As Respondents concede, recent decisions from district courts within the First Circuit and elsewhere have consistently rejected Respondents' interpretation of § 1225(b)(2)'s mandatory detention scheme under similar factual circumstances. *See Mercado v. Francis*, No.25-cv-6582 (LAK), 2025 U.S. Dist. LEXIS 232876, at *9-10, n.22 (S.D.N.Y. Nov. 26, 2025) (explaining that similarly situated petitioners "have prevailed, either on a preliminary or final basis, in 350 [out of 362] cases decided by

9

over 160 different judges sitting in about fifty different courts spread across the United States") (collecting cases); *Lopez v. Trump*, No. 2:25-cv-863, 2025 U.S. Dist. LEXIS 233128, at *6 (D. Vt. Nov. 17, 2025) (rejecting DHS's application of § 1225(b) mandatory detention to re-detain noncitizen originally released under § 1226(a)); *Caiza*, 2025 U.S. Dist. LEXIS 195270, at *7-8 (collecting cases).[5]

The phrase "'seeking admission' is undefined in the statute but necessarily implies some sort of present-tense action." *Martinez*, 792 F. Supp. 3d at 218.  As other courts to reach this issue have explained, 'seeking admission' "contemplates that those arriving, i.e. those who appear at the border or a port of entry, [who] must be inspected." *Qasemi v. Francis*, No. 25-cv-10029 (LJL), 2025 U.S. Dist. LEXIS 261199, at *18 (S.D.N.Y. Dec. 17, 2025); *see also Wazilada v. Trump*, No. 2:25-cv-00768, 2025 2025 U.S. Dist. LEXIS 256630, at *11 (D. Vt. Dec. 11, 2025) (same); *Rodriguez-Acurio*, 2025 U.S. Dist. LEXIS 233224, at *64-71 (same); *Coalition for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 81-94 (D.D.C. 2025) (same).

In the context of § 1182 parole, the D.C. District Court has explained that when the statute is "[r]ead according to its plain meaning, a noncitizen 'arriving' in the

---

[5]      Most often, though not applicable here, this Court and other district courts have held that a noncitizen continuously residing in the United States for more than two years cannot be considered actively seeking admission and are therefore not subject to mandatory detention under § 1225(b)(2) *See, e.g.*, *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247 (D. Me. 2025).  Rather, a noncitizen "already in the country pending the outcome of removal proceedings" is subject to discretionary detention under § 1226(a), *Jennings*, 583 U.S. at 289, and is therefore entitled to a bond hearing before an Immigration Judge.  *See Hernandez-Lara*, 10 F.4th at 41.  This limitation comes from language in 8 U.S.C. § 1225(b)(1), which courts across the country have consistently read to extend to § 1225(b)(2), too.  *See Moraes v. Joyce*, No. 2:25-cv-00583-JAW, U.S. Dist. LEXIS 234386, at *9-10 (D. Me. Dec. 2, 2025).  Ms. Daniel entered the United States on May 1, 2024 and CBP paroled her on May 3, 2024, she therefore has not resided continuously inside the country for more than two years.

United States would be one who is in the process of reaching his or her destination (the United States) and making an appearance here," but "[i]t would not naturally be read to refer to someone who previously reached the United States via a port of entry, underwent inspection at that port of entry, and then was paroled into the United States." *Coalition for Humane Immigrant Rts.*, 805 F. Supp. 3d at 90-91; *see also* 8 U.S.C. § 1225(b)(2) (providing for "*inspection* of other aliens") (emphasis supplied).

Although the expiration of § 1182 parole returns the parolee "to the custody from which he was paroled," 8 U.S.C. § 1182(d)(5)(A), district courts across the country have consistently held that the expiration of § 1182 parole does not require treating the noncitizen as if they had never been paroled in the first place. *See Montiel v. Raycraft*, No. 1:25-cv-1610, 2026 U.S. Dist. LEXIS 1726, at *8-9 (W.D. Mich. Jan. 6, 2026); *see also Qasemi*, 2025 U.S. Dist. LEXIS 261199, at *30-35 (rejecting the argument that § 1182(d)(5)(A)'s prescription that a noncitizen be returned to the "custody" from which they were paroled requires a return to the detention authority to which they would have been subject prior to any grant of parole); *Rodriguez v. Rokosky*, No. 25-17419 (CPO), 2025 U.S. Dist. LEXIS 250239, at *4-6 (D.N.J. Dec. 3, 2025) (same); *see also Walizada v. Trump*, No. 2:25-cv-00768, 2025 U.S. Dist. LEXIS 256630, at *38-39 (D. Vt. Dec. 11, 2025) (calling absurd the idea that the expiry of petitioner's parole now placed him in the "perpetual status" of an "arriving alien"); *Caiza*, 2025 U.S. Dist. LEXIS 211907, at *16 ("However, it does not necessarily follow that all those paroled under § 1182(d)(5)(A) were detained under § 1225 in the first instance"); *Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL,

11

2025 U.S. Dist. LEXIS 173976, at *10 (N.D. Cal. Sep. 5, 2025) ("termination of parole does not generally require treating noncitizens as if they had never been paroled in the first place").

Instead, "[s]ection 1182(d)(5)(a) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal" and mandatory detention under § 1225(b). *Qasemi*, 2025 U.S. Dist. LEXIS 261199, at *34 (internal quotations and citations omitted); *see also Rodriguez-Acurio*, 2025 U.S. Dist. LEXIS 233224, at *52-58 (same); *Vasquez-Rosario v. Noem*, No. 25-cv-7427, 2026 U.S. Dist. LEXIS 13849, at *20-21 (E.D. Pa. Jan. 26, 2026) (same); *Salgado Bustos v. Raycraft*, No. 25-13202, 2025 U.S. Dist. LEXIS 213487, at *14-19 (E.D. Mich. Oct. 29, 2025) (same); *Coalition for Humane Immigrant Rts*, 805 F.Supp.3d at 81-94 (same); *Harmanpreet Singh v. Albarran*, No. 1:25-cv-01821, 2025 U.S. Dist. LEXIS 260000, at *4-7 (E.D. Cal. Dec. 16, 2025) (same); *Walizada*, 2025 U.S. Dist. LEXIS 256630, at *38-39 (same); *Rokosky*, 2025 U.S. Dist. LEXIS 250239, at *4-6 (same); *E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 U.S. Dist. LEXIS 204373, at *20-21 (N.D. Ohio Oct. 16, 2025) (same); *Aviles-Mena*, 2025 U.S. Dist. LEXIS 173976, at *10 (same).

This logic applies neatly to the facts in Ms. Daniel's case, who, having previously been paroled by CBP, is already present in the United States with a pending asylum application. *Emer. Pet.* ¶ 11. The expiration of her parole does not renew the requirement to return to a port of entry and undergo a new inspection or

screening.  *See Walizada*, 2025 U.S. Dist. LEXIS 256630, at \*26-28; *Qasemi*, 2025 U.S. Dist. LEXIS 261199, at \*18-19, 30-35 (same).  Neither do Respondents argue that Ms. Daniel is required to undergo a new "credible fear" interview upon the termination of her parole.  *Qasemi*, 2025 U.S. Dist. LEXIS 261199, at \*18-19; *see also Caiza*, 2025 U.S. Dist. LEXIS 211907, at \*14-19 (looking to the circumstances of the initial grant of parole to determine whether § 1226(a) and 1225(b) applied to an expired § 1182 parolee).

Therefore, any determination as to Ms. Daniel's detention must be conducted under the discretionary detention framework of Section 1226(a), which "governs the process of arresting and detaining noncitizens who have already entered the United States pending their removal," including expired parolees within the United States pending the adjudication of their asylum claim.  *Tumba v. Francis*, No. 25-cv-8110 (LJL), 2025 U.S. Dist. LEXIS 219101, at \*7 (S.D.N.Y. Nov. 4, 2025) (quoting Jennings, 583 U.S. at 288).

### 3.    Bond Hearing

Because Ms. Daniel is currently in the United States, she is "entitled to the full procedural safeguards of the Due Process Clause of the Fifth Amendment," *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 31 (D. Mass. 2025), which provides that she will not be "deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V; *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether

13

their presence here is lawful, unlawful, temporary, or permanent"). As the petitioner, however, Ms. Daniel bears the burden of demonstrating by a preponderance of the evidence that her detention violates the Due Process Clause of the Fifth Amendment. *See De Oliveira v. Joyce*, 2:25-cv-00291-LEW, 2025 U.S. Dist. LEXIS 125776, at *8 (D. Me. July 2, 2025) (citing *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting authority)).

To determine whether detention violates procedural due process, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Hernandez-Lara*, 10 F.4th at 27-28; *see also Chogllo Chafla*, 804 F. Supp. 3d 247 at 261-264 (analyzing procedural due process challenge to the detention of noncitizen held pursuant § 1226(a) using the *Mathews* test); *Sampiao*, 799 F. Supp 3d at 30, 34 (same). Under *Mathews*, a court must weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### a.    Private Interest

In her petition, Ms. Daniel asserts "the most elemental of liberty interests—the interest in being free from physical detention by [the] government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom

14

from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Fifth Amendment's Due Process Clause] protects"). A noncitizen subject detained under § 1226(a) vindicates their due process rights through a bond hearing before an Immigration Judge who requires the government either to (1) prove by clear and convincing evidence that a noncitizen poses a danger to the community or (2) prove by the preponderance of the evidence that they pose a flight risk in order to detain them throughout the pendency of their removal proceedings. *See Hernandez-Lara*, 10 F.4th at 41. In this case, Respondents have refused Ms. Daniel the bond hearing she is guaranteed under § 1226(a) and have failed to meet their burden for her continued detention as due process requires. Ms. Daniel has therefore clearly established the first *Mathews* factor weighs in her favor.

### b.      Risk of Erroneous Deprivation

The second *Mathews* factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of erroneous deprivation is large where, as here, Respondents have made no showing that Ms. Daniel presents any public safety or flight risk. Accordingly, the second *Mathews* factor also weighs heavily in her favor.

### c.      Government Interest

Finally, the third *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* Respondents do

15

not raise any governmental interest favoring Ms. Daniel's continued detention without a bond hearing. *See Chogllo Chafla*, 804 F. Supp. 3d at 263 (identifying governmental interest in favor of immigration habeas petitioners' continued detention without a hearing as an "across-the-board application of an inapplicable statute"). In fact, the public interest weighs against detention without a hearing. *See Hernandez-Lara*, 10 F.4th at 33 (finding "unnecessary detention" of noncitizens "imposes substantial societal costs"). Thus, the third *Mathews* factor weighs against Respondents and in favor of Ms. Daniel.

The Court concludes that Respondent's detention of Ms. Daniel without a bond hearing pursuant to § 1226(a) therefore violates her due process rights.

## IV.    CURRENT STATUS

Although the Court determines Ms. Daniel is entitled to a bond hearing, given the unique circumstances of this case, which involve a public health risk if Ms. Daniel were to attend a bond hearing, the Court suspends its order requiring Respondent to provide Ms. Daniel a bond hearing until she is no longer a public health risk. In the meantime, the Court orders Ms. Daniel immediately released from Respondent's custody, subject to the conditions of her May 3, 2024 release on personal recognizance. The Court further orders that Respondent may not re-detain Ms. Daniel or otherwise separate her from her infant child without seventy-two-hours prior notice to Ms. Daniel's counsel. Once Ms. Daniel recovers from her current medical condition, if the parties wish to seek amendment of this order, they are free to do so.

## V.      CONCLUSION

The Court GRANTS in part and DISMISSES as moot in part Beatriz Kola Daniel's Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 with Request for Emergency Temporary Restraining Order, Preliminary Injunction, and Immediate Reunification of Breastfeeding Mother and Infant Child (ECF No. 1). The Court GRANTS her emergency petition for writ of habeas corpus and DISMISSES as moot her request for emergency temporary restraining order and preliminary injunction.  Accordingly, the Court ORDERS Respondent to immediately release Beatriz Kola Daniel from their custody, subject to the conditions of her May 3, 2024 release on personal recognizance.  The Court further ORDERS Respondent may not re-detain Ms. Daniel or otherwise separate her from her infant child without seventy-two-hour prior notice to Ms. Daniel's counsel.  Lastly, the Court ORDERS Ms. Daniel to file under seal no later than three days from the date of this order a copy of the letter from the chief medical officer at Mercy Hospital the Court relied on for the additional facts at the second teleconference on April 3, 2026.  *Min. Entry* (ECF No. 11).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of April, 2026

17